## CITY OF LEESBURG v. PEMBERTON.

Circuit Court, Lake County, Criminal Appeal.
February 4, 1953.

C. Welborn Daniel, Leesburg, for appellant.

Walter Warren, Leesburg, for appellee.

T. G. FUTCH, Circuit Judge.

This is an appeal from the municipal court of the city of Leesburg. Appellant was convicted and sentenced (so it is said) in the municipal court of that city on a charge of operating an automobile while intoxicated to such an extent as to be deprived of the full possession of his normal faculties.

The record does not show any finding of a verdict of guilty, neither does it show either judgment or sentence. It does contain a copy of a docket entry reciting that judgment was pronounced by the court and that sentence was imposed.

Appellant makes no point of the sketchy record as above noted, but I am calling attention to this condition because it exists in three separate appeals now before this court. It is a condition which the city should correct.

This case, like many others of a like nature, developed into a trial of the defendant for drinking alcoholic beverages and not for driving an autombibile as charged in the affidavit and warrant.

The officer who made the arrest and preferred the charge saw the defendant from both front and rear of his automobile while it was in motion traveling along East Main Street in Leesburg. The testimony of the officers discloses that they stopped him for exceeding the speed limit, and one of them asked him —"What's the rush?" Up to this point they had observed nothing to lead them to believe he was intoxicated. Then they smelled what they thought was an alcoholic odor on his breath and they found a liquor bottle somewhere in his car (but they could not remember where). So off they take him to headquarters for "analysis"—to try to find some evidence upon which to make a charge against him. Officer Perry in his testimony on pages 8 and 9 of the transcript said—

Q. You say when you saw him out there on Main Street you shined your spotlight and blew your horn?  A.  Yes.

Q. And he stopped?  A.  Yes.

Q. You did not have to chase him?  A.  No, he stopped right off.

Q. He did not give you any argument or trouble at all?  A.  No.

Q. Did you arrest him then or later?  A.  Arrested him at the scene.

Q. What did you charge him with, drunk driving?  A.  No.

Q. What did you charge him with?  A.  Nothing, had to bring him to the station first, to take the tests, just asked him to come to the station with me. I told him if the test did not prove out, we would charge him with reckless driving.

Q. But you took him into custody?  A.  Yes, and brought him to the police station to take the tests.

Q. When did you actually place him under arrest and charge him with driving under the influence of intoxicating beverages?  A.  Right here at the station, after the test showed what it did.

Q. What test?  A.  The drunkometer test, it showed .22, so I charged him then.

This whole case is bottomed on the so-called "drunkometer test." Dr. Glenn C. Forrester, Ph. D., manager of the Intoximeter Association, Niagara Falls, N. Y., in his book "Chemical Tests for Alcohol in Traffic Law Enforcement" has this to say concerning the use of such instruments—

In consequence, too much reliance must not be placed on the color test alone. It is unerring in its identification of alcohol, and as an estimation of blood alcohol level it is far superior to the usual criteria of odor of breath, speech, gait, etc. It is designed, and must be regarded primarily, as an aid to the officer who is making a careful study with the aid of the Alcohol Influence Questioning Form. *Its considered use is of great value, but its categorical interpretation in hundreds of one percent is not justified.* (Italics added.)

The officers had seen the appellant driving his automobile, had seen him stop his car as soon as he knew they wanted him to, had seen him get out of his car and had talked to him—yet they could not tell whether his faculties for driving a car were impaired, as is shown by the testimony of officer Perry quoted above.

Officer Perry gave the appellant what he called the "balloon test" or drunkometer test which he says showed the appellant to be very much intoxicated. They also, however, made moving pictures of the appellant as he "walked the line heel to toe." The pictures were exhibited to this court. If the drunkometer showed the appellant was intoxicated, the moving pictures clearly proved it wrong.

I dare say neither the honorable judge who tried this case nor the chief of police could do a better job of "walking the line heel to toe" than the appellant did.

The chief of police testified that moving pictures are taken of accused persons in practically all drunk driving cases. It is to be noted in this case that the pictures were produced only after demand made by appellant's attorney and an adjournment of the trial for two weeks. The only purpose in taking moving pictures in such cases is for their value as evidence—and if the city is going to follow the practice of taking such pictures it should either produce them in evidence or make them available to the accused for introduction in evidence.

In this case it is clear that nothing was taken into consideration in making the charge against the appellant except the drunkometer test, and the unsupported results of any such tests are not sufficient to convict a man of driving while intoxicated. It should be remembered that the accused not only is subject to punishment by the city but also by the state in that his license to operate an automobile in the state is cancelled. No one has tested the right of the state to punish a man for violating municipal ordinances as is done in drunk driving cases and whether

or not such action would be upheld by the courts is an open question—the law imposing such punishment is in force, however, and it is used every time a person is convicted of drunken driving in a municipal court.

It is therefore ordered that the sentence and judgment be and the same are hereby reversed, with instructions to dismiss the same and release the appellant and his sureties, if any there are, of all obligations existing by reason of the supersedeas bond, or otherwise, at the cost of the city of Leesburg.